J-S82013-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN RE: ADOPTION OF C.M.W., A | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| MINOR | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF:  R.C.W., FATHER | : | No. 1022 MDA 2016 |

Appeal from the Order Entered May 26, 2016
In the Court of Common Pleas of Cumberland County
Orphans' Court at No(s):  66 Adoptions 2015

BEFORE:  OTT, DUBOW, and PLATT[*], JJ.

MEMORANDUM BY OTT, J.:                    **FILED NOVEMBER 22, 2016**

R.C.W. ("Father") appeals from the order entered May 26, 2016, in the Court of Common Pleas of Cumberland County, which involuntarily terminated his parental rights to his minor daughter, C.M.W. ("Child").[1] After careful review, we affirm.

The orphans' court summarized the relevant factual and procedural history of this matter as follows.

> [K.B. and J.B. ("the Petitioners")] are the maternal great aunt and great uncle of Child.  Child was born [in January of 2015] and placed in the custody of [the Petitioners] [a few days after her birth].  Child was placed into the custody of [the Petitioners] by the State of Maryland's Child Welfare Services,

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The orphans' court terminated the parental rights of Child's mother, H.N.B. ("Mother"), on January 21, 2016.  Mother has not filed a brief in connection with this appeal, nor has she filed her own separate appeal.

pursuant to a safety plan entered into by that agency and Child's Mother. . . .

When Child was conceived, [Father] was on parole following a conviction for attempted armed robbery. [Father] is presently incarcerated in the State of Maryland, after violating the conditions of his parole by failing a drug test and failing to report to his parole officer. The earliest date [Father] could be paroled would be some time in October of 2016. [Father] will then remain on parole until 2023.

Subsequent to receiving Child, [the Petitioners] filed for custody and, by Order of Court dated March 24, 2015, received primary physical custody and shared legal custody of Child. Importantly, only [the Petitioners] and Mother received any physical or legal custody of Child. Mother was permitted only supervised visitation, while [Father] was not awarded any custody or visitation at that time. Mother never exercised her periods of visitation. [Father] specifically did not receive shared legal custody, and was prohibited from filing a petition to review the custody arrangement until his release from prison and his completion of a drug and alcohol evaluation.

Orphans' Court Opinion, 7/21/2016, at 1-2.

On August 13, 2015, the Petitioners filed a petition to involuntarily terminate Father's parental rights to Child. The orphans' court held a termination hearing on February 19, 2016, during which the court heard the testimony of the Petitioners and Father.[2] Following the hearing, on May 26, 2016, the court entered its order terminating Father's parental rights. Father timely filed a notice of appeal on June 23, 2016, along with a concise statement of errors complained of on appeal.

_____

[2] Father was represented at the hearing by court-appointed counsel. Due to Father's incarceration, he participated in the hearing *via* telephone.

Father now raises the following issue for our review. "Did the [orphans' c]ourt abuse its discretion when it determined that [Father] took little interest in the child and that it would be in the best interest of the child to have [Father's] parental rights terminated?" Father's brief at 2.

We consider Father's claim mindful of our well-settled standard of review.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b):

determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the orphans' court terminated Father's parental rights pursuant to Sections 2511(a)(1), (2), (5), and (b). We need only agree with the court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004). Here, we analyze the court's decision to terminate under Sections 2511(a)(1) and (b), which provide as follows.

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> \*\*\*
>
> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions

described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

We first address whether the orphans' court abused its discretion by terminating Father's parental rights pursuant to Section 2511(a)(1). To meet the requirements of this section, "the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." **In re Z.S.W.**, 946 A.2d 726, 730 (Pa. Super. 2008) (citing **In re Adoption of R.J.S.**, 901 A.2d 502, 510 (Pa. Super. 2006)). The court must then consider "the parent's explanation for his or her conduct" and "the post-abandonment contact between parent and child" before moving on to analyze Section 2511(b). **Id.** (quoting **In re Adoption of Charles E.D.M.**, 708 A.2d 88, 92 (Pa. 1998)).

This Court has explained that a parent does not perform his or her parental duties by displaying a "merely passive interest in the development of the child." **In re B.,N.M.**, 856 A.2d 847, 855 (Pa. Super. 2004), *appeal denied*, 872 A.2d 1200 (Pa. 2005) (quoting **In re C.M.S.**, 832 A.2d 457, 462 (Pa. Super. 2003), *appeal denied*, 859 A.2d 767 (Pa. 2004)). Rather, "[p]arental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances." **Id.** (citation omitted). Critically, incarceration does not

relieve a parent of the obligation to perform parental duties. An incarcerated parent must "utilize available resources to continue a relationship" with his or her child. **In re Adoption of S.P.**, 47 A.3d 817, 828 (Pa. 2012) (discussing **In re Adoption of McCray**, 331 A.2d 652 (Pa. 1975)).

Instantly, the orphans' court found that Father has taken little, if any, interest in Child since her birth. Orphans' Court Opinion, 5/26/2016, at 5-6. The court stressed that Father has never met Child, nor has he called Petitioners to ask about Child, sent letters to Child, or requested visits. **Id.** at 5. While the court acknowledged that Father may not have had contact information for the Petitioners, the court stressed that Father has remained in contact with Mother, and could have requested the Petitioners' contact information from her. **Id.** at 6. In addition, the court observed that Father had contact information for the Petitioners' attorney. **Id.** at 11.

Father argues that the orphans' court abused its discretion because his incarceration alone is not sufficient to support the termination of his parental rights. Father's brief at 6. In addition, Father claims that he displayed an interest in Child, as he took part in naming Child and received occasional updates and pictures from Mother and his relatives. **Id.** at 6, 8. Father emphasizes that he did not have contact information for the Petitioners, and that the Petitioners never attempted to reach out to him. **Id.** at 8. Finally, Father insists that he would call Child on a regular basis if she were older and able to talk. **Id.** at 9.

After a thorough review of the record in this matter, we conclude that the orphans' court did not abuse its discretion by involuntarily terminating Father's parental rights to Child. During the termination hearing, K.B. testified that she and her husband, J.B., have cared for Child since a few days after her birth in January of 2015. N.T., 2/19/2016, at 4. K.B. explained that she has never met Father, and only knows who Child's father is because Mother told her. *Id.* at 5-6. K.B. stated that her address has remained the same since the custody proceedings in March of 2015, but that she has not received any letters or other attempts at communication from Father. *Id.* at 6-7.

Similarly, J.B. testified that he has never met Father, and that he has not received any attempts at communication from Father in the past year. *Id.* at 12-13. Father did not send letters, gifts, or text messages, nor did he call on the phone. *Id.* at 13. J.B. confirmed that he and K.B. have had the same address and phone number for the past year, and that he has not done anything to conceal this information from Father. *Id.* at 14.

While Father admitted that he has never met Child, Father testified that he played a role in naming Child, and that he has maintained contact with Mother, who provides him with occasional updates on Child.[3] *Id.* at 21-

_____

[3] Concerning Mother's ongoing contact with the Petitioners, J.B. testified that he and K.B. were required to text pictures of Child to Mother as a result of the March 2015 custody proceedings. N.T., 2/19/2016, at 30-31. J.B. reported having minimal contact with Mother since that time. *Id.* at 31, 33.
*(Footnote Continued Next Page)*

22. Father also reported that Mother and his sister have provided him with pictures of Child "every couple months" since Child's birth. *Id.* at 22. Father recalled that he received paperwork as a result of the March 2015 custody proceedings, but that the paperwork did not include the Petitioners' address. *Id.* at 24-25. Father stated that he did not receive an address or phone number for the Petitioners until about three weeks prior to the termination hearing. *Id.* at 24. Father acknowledged, however, that he did have the address of the Petitioners' attorney. *Id.* at 27. Father admitted that he never wrote to or called the Petitioners' attorney "before this past month." *Id.* at 27-28. As to why he did not attempt to contact the Petitioners' attorney, Father stated, "I had all the information I needed. . . . I didn't know I had to." *Id.* at 27.

Accordingly, the record confirms that Father refused or failed to perform parental duties for a period of at least six months prior to filing of the termination petition on August 13, 2015. The record supports the finding of the orphans' court that Father has never met Child, and that Father has expressed little, if any, interest in her. As observed by the court in its opinion, Father had access to contact information for the Petitioners' attorney starting in at least March of 2015. Father also kept in touch with

(Footnote Continued) —————————————

J.B. explained, "the phone numbers that we had, when we got one and we got a call or a text from her, we would try it and then a week later it would be unavailable." *Id.* at 33.

Mother, who could have provided Father with Petitioners' contact information. Despite the availability of this information, Father made no attempt to contact the Petitioners or their attorney.

Further, we stress that Father's incarceration did not relieve him of his responsibility to perform parental duties. To the contrary, as discussed above, incarcerated parents must utilize all available resources to maintain a relationship with their children. *In re Adoption of S.P.*, 47 A.3d at 828. Here, Father made no effort to utilize the resources at his disposal in order reach out to the Petitioners and develop a relationship with Child. While Father complains that the Petitioners did not attempt to reach out to him, it is clear that the Petitioners were under no obligation to do so. Father is not entitled to relief.

We next consider whether the orphans' court abused its discretion by terminating Father's parental rights pursuant to Section 2511(b). We will review Section 2511(b) pursuant to *In re C.L.G.*, 956 A.2d 999, 1010 (Pa. Super. 2008) (*en banc*) (considering Section 2511(b) despite the appellant's failure to challenge the court's analysis).[4]

_____

[4] In his statement of questions involved, Father indicates that he is challenging the findings of the orphans' court that he "took little interest in the child and that it would be in the best interest of the child to have [Father's] parental rights terminated[.]" Father's brief at 2. Thus, it would appear that Father is attempting to challenge the court's findings with respect to both Section 2511(a) and Section 2511(b).

Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011)) (quotation marks and citations omitted).

Here, the orphans' court found that Child is thriving in the care of the Petitioners. Orphans' Court Opinion, 5/26/2016, at 11-12. The court observed that the Petitioners have cared for Child for nearly her entire life, that the Petitioners' home is the only home that Child has ever known, and that Child clearly is bonded with the Petitioners. *Id.* at 10. The court further found that Child has no bond with Father, and that Father will be in no position to care for Child any time soon. *Id.* at 10-12. The court concluded that Child will not suffer any harm if Father's parental rights are

terminated, and that termination will best serve Child's needs and welfare. *Id.* at 12.

We again discern no abuse of discretion. K.B. testified during the termination hearing that Child is thriving in her home, and has "come a long way." N.T., 2/19/2016, at 8. K.B. explained that she and J.B. have four biological children, and that their children are bonded with Child and have treated her like a sibling. *Id.* at 3, 8. J.B. testified that it would be in Child's best interest that Father's parental rights be terminated so that he and K.B. can adopt Child. *Id.* at 15. J.B. explained, "We have a loving, stable home environment for her. She's got siblings . . . that love and care for her and a couple of parents that love and care for her[.]" *Id.*

Thus, the record supports the conclusion of the orphans' court that Child will not suffer harm if Father's parental rights are terminated, and that terminating Father's parental rights will best serve Child's needs and welfare. Child has no bond with Father, as Child has never even met Father. Moreover, Father is not currently capable of caring for Child, and it is not clear when, if ever, he will be capable. In contrast, the Petitioners have cared for Child since shortly after her birth, and stand ready to adopt Child into a loving, permanent, and stable family. As this Court has stated, "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and

stability to a parent's claims of progress and hope for the future." ***In re Adoption of R.J.S.***, 901 A.2d at 513.

Accordingly, because we conclude that the orphans' court did not abuse its discretion by involuntarily terminating Father's parental rights to Child, we affirm the order of the orphans' court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/22/2016